LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
JOY STEPHENSON-LAWS, ESQ.          (SBN 113755)
RICHARD A. LOVICH, ESQ.          (SBN 113472)
KARLENE J. ROGERS-ABERMAN, ESQ.  (SBN 237883)
DAVID F. MASTAN, ESQ.          (SBN 152109)
VENETIA BYARS, ESQ.          (SBN 325741)
vbyars@sacfirm.com
303 N. Glenoaks Blvd., Suite 700
Burbank, CA 91502
Telephone:   (818) 559-4477
Facsimile:   (818) 559-5484

Attorneys for Plaintiff,
STANFORD HEALTH CARE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HEALTH CARE, a California Nonprofit Corporation,<br><br>                    Plaintiffs,<br><br>V.<br><br>TRUSTMARK SERVICES COMPANY, a Delaware for profit corporation, and DOES 1 THROUGH 25, INCLUSIVE,<br><br>                    Defendant. | Case No.: 5:22-cv-03946-SVK<br><br>STANFORD'S *OPPOSITION* TO DEFENDANT CHEF WAREHOUSE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>Hearing Date:      April 6, 2023<br>Hearing Time:      1:30 p.m.<br>Courtroom.:      3<br>Before:      Hon. Richard Seeborg |

////

////

////

////

////

////

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

II.     FACTUAL BACKGROUND ........................................................................1

III.    STANDARD OF REVIEW..........................................................................2

IV.     DEFENDANT'S MOTION TO DISMISS DOES NOT WITHSTAND
        SCRUTINY WITHIN THE FOUR CORNERS OF THE SAC…………….4

        A.      The SAC Pled Sufficient Facts to Allege the Existence of an Implied-
                In-Fact
                Contract…………………………………………………………..4
        B.      Stanford's California Unfair Competition Law Are Not Preempted by
                ERISA………………………………………………….
        1.      Conflict Preemption Under Section 514(A) of ERISA "Does Not
        Convert A State Claim Into An Action Arising Under Federal Law"………
        2.      Complete Preemption Under § 502(a) of ERISA Does Not Extend to
        Stanford's Claims Because They Fall Outside of The Traditional
        Relationship Governed By ERISA………………………………………
        a.      The First Prong of Davila Is Not Satisfied…………………………..
        b.      The Second Prong of Davila Is Not Satisfied………………………..
        1.      There is no relevant contract between Stanford and Chef's
        Warehouse…………………………………………………………
        C.      The SAC Pled Sufficient Facts to Allege a Quantum Meruit Cause of
        Action Because Defendant Both Requested And Benefited from the Services
        Rendered by Stanford…………………………………………………..
        1.      Stanford is not a party to any alleged ERISA covered Plan agreement
        between Chef's Warehouse and the Patient……………………………….
        2.      Chef's Warehouse acquiesced in Stanford's provision of services,
        which is all that quantum meruit requires.

V.      IF DEFENDANT'S MOTION IS GRANTED, STANFORD
        RESPECTFULLY REQUESTS THE COURT GRANT IT LEAVE TO
        AMEND……………………………………………………………19

VI.     CONCLUSION……………………………………………………..20

i

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Fednav Ltd. v. Sterling International*
    572 F. Supp. 1268, 1270 (N.D. Cal. 1983) ...................................................2

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 570 (2007). ...............................................................................2

*Ashcroft v. Iqbal*
    550 U.S. 662, 678 (2009)……………………………………………………2

*Mendiondo v. Centinela Hosp. Medical Center*
    521 F.3rd 1097, 1104 (9th Cir. 2008……………………………………….2

*Sathyabaglswaran*
    287 F.3rd 786, 788 (9th Cir. 2002.………………………………………..3

*Pareto v. F.D.I.C*
    139 F.3rd 696, 699 (9th Cir. 1998)………………………………………..3

*Baca*
    652 F.3d 1202, 1216 (9th Cir. 2011)………………………………………...3

*Gilligan v. Jamco Develop Corp.*
    108 F.3rd 246, 249 (9th Cir. 1997)………………………………………..3

*Conley v. Gibson*
    355 U.S. 41, 45-46 (1957)………………………………………………...3

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506, 514 (2002)…………………………………………………..3

*Fields v. Sedgwick Assoc. Risks, Ltd.*
    796 F.2d 299, 301 (9th Cir. 1986…………………………………………..3

*AT& T v. compagnie Bruxelles Lambert*
    94 F.3d 586, 588 (9th Cir. 1996)…………………………………………..3

*Data Disc, Inc. v. Systems Technology Associates, Inc.*
    557 F.2d 1280, 1284, 1285 n. 1 (9th Cir. 1977)……………………………..3

*Hoag Memorial Hosp. v. Managed Care Administrators*
    820 F.Supp 1232, 1237 (C.D. Cal. 1993)…………………………………..4

*Id. citing Memorial Hosp. System v. Northbrook Life Ins. Co.*
    904 F.2d 236, 246 (5th Cir. 1990)…………………………………………..5

*Barlow Respiratory Hospital v. CareFirst of Maryland, Inc.*
    Case No. CV-14-01335-MWF-(SSx), 2014 WL 12573394, at 8 (C.D. Cal.
    June 24, 2014)………………………………………………………………5

*Marin General Hospital v. Modesto & Empire Traction Company*
    581 F.3d 941, 947 (9th Cir. 2009).…………………………………………..5,8

*Cedars-Sinai Medical Center v. National League of Postmasters of the U.S.*
    497 F.3d 972, 981 (9th Cir. 2007).  …………………………………………5

*San Joaquin General Hospital v. United Healthcare Ins. Co.*
   2017 WL 1093835 at *3 (E.D. Cal. Mar. 22, 2017)…………………………5,6
*Ristau v. Madhvani*
   1991 WL 283666, at *3 (D.D.C. Dec. 20, 1991…………………………………6
*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.,*
   520 F.Supp.2d 1184 (C.D.Cal.2007………………………………………………6
*Stanford Health Care v. Blue Cross Blue Shield of N. Carolina*…………………..6
*Memorial Hospital System v. Northbrook Life Ins. Co.*
   904 F.2d 236, 243–246 (5th Cir. 1990)………………………………………...7
*The Meadows v. Employers Health Ins.*
   47 F.3d 1006, 1008–1009 (9th Cir. 1995)……………………………………...7
*Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.*
   944 F.2d 752, 756 (10th Cir. 1991)……………………………………………..7
*Lordmann Enters. v. Equicor, Inc.*
   32 F.3d 1529, 1534 (11th Cir. 1994)…………………………………………...7
*Wiggins, Medical Provider Claims: Standing, Assignments, and ERISA Preemption*
   45 J. Marshall L.Rev. 861, 884–888 (2012)………………………………………7
*Metropolitan Life Insurance Co. v. Taylor*
   481 U.S. 58, 64 (1987)…………………………………………………………8
*Morris B. Silver M.D., Inc. v. Int'l Longshore and Warehouse Union-Pacific*
   *Maritime Assoc. Welfare Plan*
   2 Cal.App. 5th  793, 802 (2016)…………………………………………………8
*Mackey v. Lanier Collection Agency & Service, Inc.*
   486 U.S. 825, 833 (1988) ………………………………………………………..8
*Marin General Hospital*
   486 U.S. 825, 833 (1988)..………………………………………………………9
*Aetna Health Inc. v. Davila*
   542 U.S. 200 (2004)……………………………………………………………..9
*Harris v. Provident Life & Accident Insurance Company*
   26 F.3d 930, 933 (9th Cir. 1994)…………………………………………….....10
*Franchise Tax Board v. Construction Insurance Company*
   463 U.S 1, 27 (1983)……………………………………………………………10
*The Meadows*
   supra, 47 F.3d at 1008–1009…………………………………………………….10
*Misic v. Building Servs. Employee Health and Welfare Trust*
   789 F.2d 1374 (9th Circ. 1986).………………………………………………..11
*Eden Surgical Ctr. v. B. Braun Med., Inc.*
   420 F. Appx 696, 697 (9th Cir. 2011)…………………………………………...11
*John Muir Health v. Cement Masons Health & Welfare Trust Fund*
   69 F.Supp.3d 1010, 1017 (N.D. Cal 2014)……………………...…………….11

30035

iii

*Marin General Hospital*
    Supra, 581 F.3rd at 948……………………………………………………..11

*Children's Hospital Central California v. Blue Cross of California*
    226 Cal.App.4th 1260, 1272 (2014)……………………………………14,15

*Bell v. Blue Cross of California*
    (2005) 131 Cal.App.4th 211, 213-214, 221, 31 Cal.Rptr.3d (Bell)…..……15

*Prospect Medical*
    supra, 45 Cal.4th at p. 505, 87 Cal.Rptr.3d 299, 198P.3d 86………………15

*Children's Hospital*
    p. 1274, 172 Cal.Rptr.3d 861………………………………...……………15

*Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*
    71 Cal App. 5th 323, 335, 286 Cal. Rprt. 3d 419, 426-27 (2021)…………..15

*Day v. Alta Bates Med. Ctr.*
    98 Cal.App.4th 243, 248 (2002)……………………………………………16

*Producers Cotton Oil Co. v. Amstar Corp.*
    197 Cal.App.3d 638 (1988)……………………………………………….....16

*Producers Cotton Oil Co. v. Amstar Corp.*
    197 Cal.App.3d 638, 658-59 (1988)………………………………………17

*San Joaquin Gen. Hosp. v. United Healthcare Insurance Co.*
    No. 2:16–cv–01904–KJM–EFB, 2017 WL 1093835(E.D. Cal. Mar. 23, 2017)……………………………………………………………………17

*Stanford Hosp. and Clinics v. Multinational Underwriters, Inc.*
    No. C-07-05497-JF-RS, 2008 WL 5221071(N.D. Cal Dec. 12, 2008)…...…17

*Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore*
    (2008) 162 Cal.App.4th 1331, 1344 [76 Cal.Rptr.3d 649]…………...…17,18

*Maglica v. Maglica*
    (1998) 66 Cal.App.4th 442, 449 [78 Cal.Rptr.2d 101]...…………………18

*E. J. Franks Construction, Inc. v. Sahota*
    226 Cal.App.4th 1123, 1127 (2014)………………………………………18

*Stanford Health Care v. Blue Cross Blue Shield of N. Carolina, Inc.*
    No. 21-CV-04598-BLF, 2022 WL 195847, at *10 (N.D. Cal. Jan. 21, 2022)……………………………………………………………………19

*Foman v. Davis*
    371 U.S. 178, 182 (1962)……………………………………………..21

STANFORD'S OPPOSITION TO DEFENDANT CHEF
WAREHOUSE'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

1

2

## **Statutes**

42 U.S.C. §§1320(d) ...................................................................................... 7

45 C.F.R. § 160.103 ....................................................................................... 7

§ 514(a) ........................................................................................... 9,10

29 U.S.C. § 1132(a) .................................................................................. 11

Cal. Health & Safety Code §§1317 et seq. ................................................ 15

Code Regs. tit. 28, § 1300.71(a)(3)(B) ............................................... 15

55 Cal. Jur. 3d Restitution § 57 ..................................................... 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Stanford Health Care ("Stanford" or "Plaintiff") hereby submits the following memorandum of points and authorities in support of its opposition to the motion to dismiss the complaint pursuant to the Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim ("Motion to Dismiss") filed by Chef's Warehouse ("Chef's Warehouse" or "Defendant"). Defendant contends that the two causes of action asserted in Stanford's Second Amended Complaint ("SAC") must be dismissed for the following reasons: (1) the claims are subject to ERISA and the state law claims must be dismissed under preemption; (2) for breach of implied-in-fact contract, there is an express contract that governs this case; (3) Stanford failed to plead any facts to support its claim of *quantum meruit*; and, (4) Stanford failed to sufficiently plead a claim for violation of the California Business and Professions Code. (Moving Papers p.7:13-26).

.

## II. FACTUAL BACKGROUND

This is an action for payment of amounts due and owing to Stanford in connection with medically necessary care rendered on January 24, 2020 to June 10, 2021 to the patient stated on Exhibit A of the SAC ("Patient"),[1] whose health insurance benefits were sponsored and administered by Defendant.  (SAC, ¶ 10).

During the relevant time, Stanford and Chef's Warehouse had no existing contract, partnership, association, or agreement. However, Chef's

---

[1] The patient is only identified by the initials pursuant to the privacy provisions of the Health Insurance Portability & Accountability Act ("HIPAA"), Pub.L. No. 104-191, 110 Stat.1936 (codified as amended in scattered sections of 26 U.S.C. and 42 U.S.C.), and California Constitution, art. 1 Section 1.

1 | Warehouse did have a contract with Trustmark, the co-Defendant.

2 |     Stanford verified each Patient' eligibility with Defendant's health

3 | plan, communicated with Defendant on a regular basis and concurrently provided

4 | clinical reports to Defendant to get authorizations for the services rendered.  (SAC,

5 | ¶ 16, 20, 22).   Stanford timely and properly billed Trustmark, who works with

6 | Chef's Warehouse, for the medically necessary services, supplies and/or equipment

7 | it rendered to the Patient. (SAC, ¶ 16, 40).  However, Defendant neglected to pay

8 | Stanford for the services rendered. (SAC, ¶ 17, 29, 40).

9 |     In order to recover payment for the medically necessary services

10 | rendered to Defendant' member, Stanford filed this lawsuit.

### III.  STANDARD OF REVIEW

13 |     Federal Rule of Civil Procedure 8(a)(2) only requires a complaint to

14 | contain "a short plain statement of the claim showing that the pleader is entitled to

15 | relief." Thus, a motion under Rule 12(b)(6) "tests the formal sufficiency of the

16 | statement of claim for relief." *Fednav Ltd. v. Sterling International*, 572 F. Supp.

17 | 1268, 1270 (N.D. Cal. 1983).  To survive a motion to dismiss, a complaint must

18 | contain sufficient factual material to "state a claim that is plausible on its face."

19 | *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, a claim

20 | is factually plausible when "the plaintiff pleads factual content that allows the court

21 | to draw the reasonable inference that the defendant is liable for the misconduct

22 | alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24 |     Dismissal for failure to state a claim is appropriate only where the

25 | complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

26 | legal theory.  See *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3rd 1097,

27 | 1104 (9th Cir. 2008).  When reviewing a motion to dismiss under Fed. R. Civ. P.

28 | 12(b)(6), the Court must accept as true all non-conclusory material allegations of

the complaint and construe them in the light most favorable to the plaintiff. *Newman v. Sathyabaglswaran*, 287 F.3rd 786, 788 (9th Cir. 2002).  The court also must draw in favor of the plaintiff all reasonable inferences derivable from the allegations in the complaint.  *Pareto v. F.D.I.C.*, 139 F.3rd 696, 699 (9th Cir. 1998).  Accordingly, if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible, the "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, a motion to dismiss under Rule 12(b)(6) is disfavored and is rarely granted, *Gilligan v. Jamco Develop. Corp.*, 108 F.3rd 246, 249 (9th Cir. 1997), and should be granted only where it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle the plaintiff to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); see also, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.")

Furthermore, "until an evidentiary hearing or trial on the merits, the complaint's uncontroverted factual allegations must be accepted as true, and any factual conflicts in the parties' declaration must be resolved in the plaintiff's favor."  *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986); see also *AT&T v. compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). ("Conflicts between the evidence must be resolved in the plaintiff's favor.")  If material facts are uncontroverted or if the evidence is inadequate, a court may permit discovery to aid in flushing out the facts. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284, 1285 n. 1 (9th Cir. 1977). If the submitted materials raise issues of credibility or disputed questions of fact, the district court has the direction to hold an evidentiary hearing in order to resolve the

contested issues. *Id.*

## IV. DEFENDANT'S MOTION TO DISMISS DOES NOT WITHSTAND SCRUTINY WITHIN THE FOUR CORNERS OF THE SAC

### A. The SAC Pled Sufficient Facts to Allege the Existence of an Implied-In-Fact Contract.

In Chef's Warehouse's opposition, they state that the facts alleged in the SAC fail to demonstrate that Chef's Warehouse acted in a way evidencing a meeting of the minds to create an implied contract. (Moving Papers p.9:10-11).

Stanford's allegations are firmly based on facts supporting mutual intentions to form a valid implied-in-fact contract as explained below.

Stanford pleaded: (1) clear contract terms – i.e., Stanford would provide treatment to Defendant' health plan enrollees, and in return, Defendant would pay the charges associated with such treatment, (SAC, ¶ 20-23); (2) that the parties agreed to give each other something of value – i.e., medically necessary services in exchange for monetary payment, (*Id.*); and (3) that the parties agreed to the terms. (SAC, ¶ 26). The mutual agreement or intent may be inferred from the *conduct* of the parties including the act of Stanford providing medical services to the Patient, a Defendant' members; and the act of Defendant making payments on the Patient' claims. *Id.*

Stanford amended to add in evidence and claims to show the meeting of the mind needed for an implied-in-fact contract. In *Hoag*, the court found that the defendant's verification of benefits was its manifestation of consent. *Hoag Memorial Hosp. v. Managed Care Administrators*, 820 F.Supp 1232, 1237 (C.D. Cal. 1993) (hospital seeking to recover additional payment from the health plan based on an oral verification of benefits). In making that finding the court stated:

1    Due to hospitals' limited funds for indigent care, if a hospital is told
2    that no coverage exists, the hospital either must obtain funds from
3    another source or transfer the patient to another facility. Thus, if a
4    plan administrator or insurance company unqualifiedly verifies
5    coverage to a health care provider, it should realize that either it is
6    consenting to the payment of plan benefits or it should "accept [the]
7    consequences for a false representation of coverage that the provider
8    reasonably relied upon."

9  *Id. citing Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 246

10  (5th Cir. 1990).

11          Additionally in *Barlow Respiratory Hospital v. CareFirst of*

12  *Maryland, Inc.*, Case No. CV-14-01335-MWF-(SSx), 2014 WL 12573394, at 8

13  (C.D. Cal. June 24, 2014), an implied-in-fact contract was entered into, as a matter

14  of law, where the medical provider and insurer engaged in direct communications

15  as to the patient's eligibility, authorization for treatment and the method of

16  payment for services rendered.

17          Finally, Chef Warehouse's Motion is inaccurate in stating that

18  authorization is insufficient to create an implied-in-fact contract. (Moving Papers

19  p. 12:1-3). Despite Chef Warehouse's attempt to mislead the Court, Stanford is

20  entitled to payment based on pre-authorization and verification of coverage

21  obtained prior to rendering medical services.  The Ninth Circuit recognized that

22  communication during authorization and verification of coverage may form an

23  agreement to pay.  See *Marin General Hospital v. Modesto & Empire Traction*

24  *Company*, 581 F.3d 941, 947 (9th Cir. 2009); and *Cedars-Sinai Medical Center v.*

25  *National League of Postmasters of the U.S.,* 497 F.3d 972, 981 (9th Cir. 2007).

26  Moreover, California's Eastern District has held that authorizing the medical

27  services and making partial payment for them were sufficient to form an implied

28  contract. See *San Joaquin General Hospital v. United Healthcare Ins. Co.*, 2017

WL 1093835 at *3 (E.D. Cal. Mar. 22, 2017) <u>citing</u> *Ristau v. Madhvani*,1991 WL 283666, at *3 (D.D.C. Dec. 20, 1991). Furthermore, in *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184 (C.D.Cal.2007), the court implied that where the insurer provided both a pre-authorization and a verification of coverage in a non-emergency situation, that created an agreement to pay for the authorized services. *Id.* at 1194.

Additionally, this case is different from *Stanford Health Care v. Blue Cross Blue Shield of N. Carolina*. This case deals with multiple patients coming into Stanford multiple times and no communication from Chef's Warehouse to change or move said patients. In fact, Chef's Warehouse, though Trustmark, did not start to send out EOB's until the end of the total treatment of for the patients mentioned in the Implied in Fact cause of action.  (SAC, ¶ 24-25). Stanford adequately pled that the treatment of those patients multiple times, with repeated contact with Defendant over it does give rise to mutual assent, as Defendant knew about the treatment, how much it would cost and did not do anything in response. Finally, Defendant is asserting that Stanford needs to pled HIPAA confidential information in the complaint to be able to bring this action of recovery, such as EOB information, verification and authorization information. This is clearly against the privacy provisions of the federal Health Insurance Portability & Accountability Act ("HIPAA") 42 U.S.C. §§1320(d), et seq and 45 C.F.R. § 160.103.

For the above stated reasons, Stanford properly pled a cause of action for breach of implied-in-fact contract.  Thus, Chef Warehouse's Motion should be denied.

**B.** **Stanford's California Unfair Competition Law Are Not Preempted by ERISA**

Defendant's argument that ERISA preempts a UCL claim by a third-party beneficiary runs headlong into well-established federal precedent. *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 243–246 (5th Cir. 1990) (leading case holding hospital's claim for deceptive and unfair practices arising from representations regarding coverage not preempted and articulating two-factor test); *The Meadows v. Employers Health Ins.,* 47 F.3d 1006, 1008–1009 (9th Cir. 1995) (adopting the *Memorial Hospital* test and holding ERISA does not preempt "claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an independent entity claiming damages").

Moreover, courts around the country have allowed action brought by a health care provider seeking proper reimbursement from a health plan for services rendered. See *Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) ("An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan. Preemption in this case would stretch the 'connected with or related to' standard too far."); *Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1534 (11th Cir. 1994) ("[f]inding the Memorial Hospital court's reasoning persuasive, we hold that ERISA does not preempt a health care provider's negligent misrepresentation claim against an insurer under an ERISA plan"); see generally *Wiggins, Medical Provider Claims: Standing, Assignments, and ERISA Preemption*, 45 J. Marshall L.Rev. 861, 884–888 (2012).

1    **1.  <u>Conflict Preemption Under Section 514(A) of ERISA "Does Not
2        Convert A State Claim Into An Action Arising Under Federal
3        Law"</u>**

4            Preemption under section 514(a) is known as "conflict" preemption

5    under ERISA.  *Marin General Hospital v. Modesto & Empire Traction Co.*, 581

6    F.3rd 941, 945 (9th Cir. 2009), Section 514(a) of ERISA provides ERISA shall

7    "supersede any and all State laws insofar as they may now or hereafter relate to any

8    employee benefit plan..."  29 U.S.C. § 1144(a).  However, "a defense of conflict

9    preemption under § 514(a) does *not* confer federal question jurisdiction on a

10   federal district court."  *Id*. at 946 (emphasis added).  More specifically, conflict

11   preemption "does not convert a state claim into an action arising under federal

12   law". *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64 (1987); <u>see also</u>

13   *Marin General Hospital,* <u>supra</u>, 582 F.3d at 945. Furthermore, the *Morris* court

14   noted that courts have recognized that 'relatively commonplace' lawsuits against

15   ERISA plans for "'run-of-the-mill state-law claims such as unpaid rent, failure to

16   pay creditors, or even torts committed by an ERISA plan' are not preempted even

17   though they 'obviously affect[] and involve[] ERISA plans and their trustees.'"

18   *Morris B. Silver M.D., Inc. v. Int'l Longshore and Warehouse Union-Pacific*

19   *Maritime Assoc. Welfare Plan*, 2 Cal.App. 5th  793, 802 (2016). <u>See also</u> *Mackey*

20   *v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 833 (1988) (holding

21   that "lawsuits against ERISA plans for run-of-the-mill state-law claims such as

22   unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan"

23   are not preempted even though they "obviously affect[ ] and involve[ ] ERISA

24   plans and their trustees.").

25

26

27

28

2.  **Complete Preemption Under § 502(a) of ERISA Does Not Extend to Stanford's Claims Because They Fall Outside of The Traditional Relationship Governed By ERISA**

Complete preemption under § 502(a) is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim."  *Marin General Hospital*, supra, 581 F.3d at 945.  § 502(a)(1)(B) provides that "[a] civil action may be brought—(1) by a participant or beneficiary—...(2) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a).

The test for complete preemption of a state claim under § 502(a) is whether "(1) 'an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),' *and* (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.' "  *Marin General Hospital*, supra, 581 F.3rd at 946, (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)) (emphasis added).  "The two prong test of *Davila* is in the conjunctive.  As such, a state-law cause of action is preempted by § 502(a)(1)(B) only if **both** prongs of the test are satisfied."  *Marin General Hospital*, supra, 581 F.3rd at 947 (emphasis added).  In this case, neither prong is satisfied.

a.  **The First Prong of Davila Is Not Satisfied**

First, as in *Marin General Hospital*, Stanford could not have brought its state-law claim under Section 502(a)(1)(B) of ERISA because it does not have statutory standing to sue under ERISA.  Stanford has <u>no standing</u> under ERISA since it is not a participant, beneficiary, employer or fiduciary of an ERISA plan,

1   nor is it acting in the capacity of a public official authorized to bring such an

2   action. 29 U.S.C. § 1132(a).  No other person has standing to maintain an ERISA

3   action.  *Harris v. Provident Life & Accident Insurance Company*, 26 F.3d 930, 933

4   (9th Cir. 1994) <u>citing</u> *Franchise Tax Board v. Construction Laborers Vacation

5   Trust*, 463 U.S. 1, 27 (1983).  Therefore, any argument that Stanford's state law

6   causes of action are preempted based on ERISA is a legal impossibility since

7   Stanford lacks standing to bring an action on ERISA grounds.

8

9           Second, ERISA preemption further does not apply since Stanford's

10  causes of action are not claims that the Patients could have alleged against the

11  Defendants.  The state law causes of action of Stanford, as a third-party medical

12  provider, seeking damages relating to the authorized medical services are not

13  preempted by ERISA. <u>See</u> *The Meadows*<u>, supra</u>, 47 F.3d at 1008–1009 (adopting

14  the *Memorial Hospital* test and holding ERISA does not preempt "claims by a

15  third-party who sues an ERISA plan not as an assignee of a purported ERISA

16  beneficiary, but as an independent entity claiming damages").

17

18          In the case at hand, the SAC's causes of action: (1) breach of implied

19  in fact contract, (2) *quantum meruit* and, (3) violation of California's Unfair

20  Competition Law, are the result of the Defendant's conduct with Stanford. The

21  Patients simply could not bring these causes of action either by themselves or

22  through their assignees.  Rather, these causes of action arose from the operation of

23  Stanford and its interaction with the Defendant as commercial entities having

24  commercial dealings with one another.  Such a creditor-debtor relationship is not

25  one that is preempted by ERISA.

26

27          It should be noted that in limited circumstances, the Ninth Circuit has

28  recognized "derivative standing"—the validity of benefit plan assignments to

health care providers. See *Misic v. Building Servs. Employee Health and Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) (permitting derivative standing where physician-plaintiff did not have independent contractual relationship with the plan). *Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 F. Appx 696, 697 (9th Cir. 2011) (holding that "health care providers may obtain derivative standing to assert claims under ERISA by securing an assignment of the party with standing's rights."). However, Judge Thelton Henderson dictated that an enrollee's assignment of its right to payment to a provider is "of no consequence" when it is the *amount* of the payment being disputed and *not* the right to payment. *John Muir Health v. Cement Masons Health & Welfare Trust Fund*, 69 F.Supp.3d 1010, 1017 (N.D. Cal. 2014) (emphasis added).

By citing only distinguishable cases, Defendant's seek to have the Court assume that Stanford's s claims are preempted by ERISA based on some impossible assignment theory. However, Stanford has not brought an action to recover plan benefits or the right to payment but rather to recover *damages* arising from state-law theories of recovery. [SAC, ¶ 8.] Nowhere in the SAC does Stanford allege that it is suing based on an assignment of benefits from the patient at issue, or otherwise standing in the shoes of the patient in seeking recovery from the Defendants. Nevertheless, even if it had, *Marin General Hospital* makes it clear that the hospital has the right to sue upon an independent obligation, which is what it is doing here. Additionally, mere assignment of benefits to plaintiffs does not prevent them from bringing a separate action based on a different legal obligation. *Marin General Hospital,* supra, 581 F.3rd at 948.

Here, Stanford is not stepping into the shoes of the plan beneficiary and is not bringing the action as a plan beneficiary against the Defendants. Accordingly, the *Davila* first prong is not satisfied.

**b.  <u>The Second Prong of Davila Is Not Satisfied</u>**

The second prong of the Davila test is also not satisfied:  Stanford's SAC is based upon independent state law legal duties to recover damages based on the Defendants' breach of implied in fact contract, violation of California's Unfair Competition Law and *quantum meruit*.

**1.    <u>There is no relevant contract between Stanford and Chef's Warehouse</u>**

Chef's Warehouse alleges that there is an applicable contract. (Moving Papers p. 12:6, 15-18; 16:16-17, 22-25). It leaves out any analysis about how this contract binds Stanford – as Stanford is not a party or signatory to this contract.  Chef's Warehouse seems to be trying to hold Stanford to the terms of a contract <u>between</u> Chef's Warehouse and Trustmark. As Stanford was never a party to this contract, it does not preempt the causes of action in this case.

**C.    <u>The SAC Pled Sufficient Facts to Allege a *Quantum Meruit* Cause of Action Because Defendant Both Requested And Benefited from the Services Rendered by Stanford</u>**

Defendant motion to dismiss as to the third cause of action rests upon the fact that Stanford did not properly allege Defendant made a request for services and that the services rendered benefited Defendant (Moving Papers p. 14:12-28; 15:1-3).  However, under California law a formal request for service is not required, especially in situations pertaining to emergency medical services rendered to a payor's beneficiary.  There is one claim at issue that specifically involves emergency medical services as was the case with Patient 8 (cite to SAC).

.  As a member of the Defendant's health plan, who pays premiums for such medical coverage, Patient 8 benefited from the medically necessary services rendered by Stanford.  By providing such medically necessary care to Patient 8, Stanford conferred a benefit upon Chef's Warehouse because it allowed Chef's Warehouse to make good on promises made to their beneficiaries that their beneficiaries and their families would receive and be covered for medically necessary treatment and would shield their beneficiaries from the bulk of the financial responsibility for payment for medical care received by them and their families.  For example, when the plan beneficiaries pay premiums, Chef's Warehouse becomes obligated to accept, process, arrange for, and/or pay claims for the value of medical services rendered to their beneficiaries and/or their families.  Thus, by fulfilling its coverage obligations to its plan beneficiaries and their families, Chef's Warehouse does not have to face allegations that they breached any duties owed to the plan beneficiaries and their families.  In other words, by rendering medical care to Patient 8 in conjunction with Chef's Warehouse's authorization, Stanford helped Chef's Warehouse fulfill its legal duty as explained above.  Thus, a benefit accrued to Chef's Warehouse and Stanford is entitled to the reimbursement of the reasonable value of the services.  The reasonable value of the services is the total billed charges.

Chef's Warehouse is also trying to impose a contract discount on Stanford, which was never offered or agreed to by Stanford. As Stanford has no contract with Chef's Warehouse, Stanford is not asserting anything under the referred Plan in the Moving Papers. (Moving Papers p.15:4-10). Still, Chef's Warehouse continuously tries to push contract terms onto Stanford who is not a signatory to any contract.  Whatever terms are under the Plan Document is of no relevance to this case, except as to the benefit received. Additionally, as this was an emergency service, Chef's Warehouse benefited from Stanford keeping Patient

8 alive and well, thus that they can continue to be a member and pay for their insurance under Chef's Warehouse. Chef's Warehouse main argument is that they receive no benefit from their members being treated, which brings into question what their responsibility is as an insurer if not to help provide and pay for treatment for their members.

Under California law, hospitals are required to provide necessary health care and insurers are required to pay the customary and reasonable value. *Cal. Health & Safety Code* §§1317 et seq. Chef's Warehouse admits, through the Plan Document a contradictory assertion that although it covers the patient's treatment, the patient derived no benefits from this care.  This is a disingenuous argument. As Stanford is not a party to the Plan Document, Plaintiff is entitled to the reasonable and customary value of the treatment provided, without a discount. And there is no argument towards whether a benefit was received, as the Plan Document acknowledges that this treatment would be paid for under the Document.

Despite Defendant's attempt to dodge its financial obligation to reimburse Stanford for the emergency services rendered to Defendant's members, California Courts have consistently recognized that reimbursement for emergency services to a noncontracted provider shall be at the "reasonable and customary value." (*Children's Hospital Central California v. Blue Cross of California*, 226 Cal.App.4th 1260, 1272 (2014) (finding Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B) defines 'Reimbursement of a Claim' by a health plan to a noncontracted emergency provider as "'the payment of the reasonable and customary value for the health care services rendered.'")).

"If a hospital or other medical provider believes that the amount of

1  reimbursement it has received from a health [] plan is below the "reasonable and

2  customary value" of the emergency services it has provided, the hospital or

3  provider may assert a quantum meruit claim against the plan to recover the

4  shortfall. *Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 213-214,

5  221, 31 Cal.Rptr.3d 688 (Bell); *Prospect Medical*, supra, 45 Cal.4th at p. 505, 87

6  Cal.Rptr.3d 299, 198 P.3d 86; *Children's Hospital Central California v. Blue*

7  *Cross of California* (2014) 226 Cal.App.4th 1260, 1273, 172 Cal.Rptr.3d 861

8  (*Children's Hospital*).) As the plaintiff in a quantum meruit lawsuit, the hospital or

9  provider bears the burden of establishing that the plan's reimbursement was less

10 than the "reasonable and customary value" of its services. (*Children's Hospital*, at

11 p. 1274, 172 Cal.Rptr.3d 861.)" (*Long Beach Mem'l Med. Ctr. v. Kaiser Found.*

12 *Health Plan, Inc.,* 71 Cal. App. 5th 323, 335, 286 Cal. Rptr. 3d 419, 426–27

13 (2021)).

14

15       It is unreasonable that Chef's Warehouse's can claim under *quantum*

16 *meruit* that it no payment should be made even if Patient 8 made 11 visits to

17 Stanford.  Chef's Warehouse could still claim, as it does here, that it never

18 requested services.  And yet, $478,797.96 worth of services would remain unpaid.

19

20       This goes against public policy in keeping hospital doors open. And

21 yet, it is a central point in Chef's Warehouse's argument.  The real dispute in this

22 case is over the "the reasonable value of the services," which is the "[t]he measure

23 of recovery in quantum meruit."  (*Children's Hosp. Cent. California v. Blue Cross*

24 *of California*, 226 Cal. App. 4th 1260, 1274 (2014)).  But Chef's Warehouse is

25 trying to finagle out of *quantum meruit* elements because it knows "reasonable

26 value" issues are not at the motion to dismiss stage.  No market participant believes

27 hospitals are in the business of providing gratuitous services, and certainly not to

28 insured patients, on their third go-round, when hospitals obtained verification and

authorization for services.

In any event, Chef's Warehouse arguments also fail on their own terms.

## 1. __Stanford is not a party to any alleged ERISA covered Plan agreement between Chef's Warehouse and the Patient.__

Ignoring the throat-clearing recitations of law, the entirety of this argument is contained in a single sentence: "Plaintiff's quantum meruit claim is barred because a valid, written contract (the Plan Document) established the terms for the reimbursement of Plaintiff for treatment of the Patients by the Health Plan" (Moving Papers p. 16:22-24). But Stanford is not a party to any such contract, which is between the Plan, both Defendants and Patient 8. This argument has no merit.

## 2. __Chef's Warehouse acquiesced in Stanford's provision of services, which is all that quantum meruit requires.__

While it is true that a *quantum meruit* plaintiff must show "either an express or implied request" for services (*Day v. Alta Bates Med. Ctr.,* 98 Cal.App.4th 243, 248 (2002)), that very same case makes clear that the "implied request" can be satisfied by "acquiesce[ing]" in them. (*Id.* at p. 249.) The case *Day* cites to *Producers Cotton Oil Co. v. Amstar Corp.,* 197 Cal.App.3d 638 (1988), which involved a farmer, the buyer of his crops, the farmer's lender, and an independent contractor who harvested the farmer's crops. The buyer paid the harvester to bring in the crops, but the lender claimed a superior security interest and the buyer ended up losing the money it fronted so the crops could be

harvested.  (*Id.* at pp. 643-645.)  The lender knew the buyer was fronting these costs and stood mute.  (*Id.* at pp. 658-59.)  The Court of Appeal concluded the lender had acquiesced in the buyer's payment to the harvester, even though the harvester and the lender had nothing to do with one another.  (*Ibid.*)  That is to say, a cash payment to a third-party with no relation to the defendant was deemed "requested," or more accurately, acquiesced in.  Thus, the hornbook law in California is: "[W]here a useful service of a type usually charged for is performed for another with the latter's knowledge, a promise to pay its reasonable value is implied from the fact that he or she expressed no dissent."  (55 Cal. Jur. 3d Restitution § 57.)

California courts applying California law define "request" for purposes of *quantum meruit* to include accepting services silently or otherwise simply acquiescing in services one knows cost money (*Producers Cotton Oil Co. v. Amstar Corp.,* 197 Cal.App.3d 638, 658-59 (1988); 55 Cal. Jur. 3d Restitution § 57); and some federal courts applying California law have let identical claims proceed (*San Joaquin Gen. Hosp. v. United Healthcare Insurance Co.,* No. 2:16–cv–01904–KJM–EFB, 2017 WL 1093835(E.D. Cal. Mar. 23, 2017)), at the least past the motion to dismiss/demurrer stage (*Stanford Hosp. and Clinics v. Multinational Underwriters, Inc.,* No. C–07–05497-JF-RS, 2008 WL 5221071(N.D. Cal. Dec. 12, 2008)), since discovery may reveal more about how Chef's Warehouse views its authorizations in practice.  "Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." ' [Citation.]" ( *1128 *Miller v.*

*Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1344 [76 Cal.Rptr.3d 649].) "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money.' [Citation.]" (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 449 [78 Cal.Rptr.2d 101], italics omitted.) " 'The measure of recovery in quantum meruit is the reasonable value of the services rendered provided they were of direct benefit to the defendant.' [Citations.]" (*Ibid*.) In other words, quantum **781 meruit is equitable payment for services already rendered." *E. J. Franks Construction, Inc. v. Sahota,* 226 Cal.App.4th 1123, 1127 (2014).

The choice before the Court is clear:  an audaciously overbroad statement of law that would allow health plans to skip out on the bill entirely or a consistent application of California *quantum meruit* law.  Although Chef's Warehouse paid a small amount in this case, eliminating potential *quantum meruit* liability as a matter of law because patients are the ones who physically appear in doctors' offices (rather than their insurers) will guarantee the next non-contracted insurer pays even less.

Finally, this case is wholly separate from *Stanford Health Care v. Blue Cross Blue Shield of North Carolina, Inc.*. That case did not involve emergency care, in fact the Court did not rule on what would happen in emergency care situations. "The Court notes that based on Stanford's pleadings, the situation it raises is a hypothetical not before the Court, since Stanford has not adequately pled that any of the specific services in this case involved emergency care or an unconscious patient. See FAC, ECF No. 13 ¶ 21 (generally pleading that the services at issue included "emergency services" without specifying the relevant

- 19 -

1   patients or claims)." *Stanford Health Care v. Blue Cross Blue Shield of N.*

2   *Carolina*, Inc., No. 21-CV-04598-BLF, 2022 WL 195847, at *10 (N.D. Cal. Jan.

3   21, 2022).

4

5   **V.**

6   **IF DEFENDANT'S MOTION IS GRANTED, STANFORD**

7   **RESPECTFULLY REQUESTS THE COURT GRANT IT LEAVE TO**

8   **AMEND**

9

10    Stanford believes it sufficiently pled each cause of action alleged in its SAC

11   based upon state law obligations between it and Defendant, independent of the

12   terms of Patient's health plan.  However, in the event the Court finds otherwise,

13   Stanford respectfully requests the Court grant it leave to amend.

14    Rule 15(a) declares that leave to amend 'shall be freely given when

15    justice so requires'; this mandate is to be heeded. See generally, 3

16    Moore, Federal Practice (2d ed. 1948), 15.08, 15.10.  If the underlying

17    facts or circumstances relied upon by a plaintiff may be a proper

18    subject of relief, he ought to be afforded an opportunity to test his

19    claim on the merits. In the absence of any apparent or declared

20    reason—such as undue delay, bad faith or dilatory motive on the part

21    of the movant, repeated failure to cure deficiencies by amendments

22    previously allowed, undue prejudice to the opposing party by virtue of

23    allowance of the amendment, futility of amendment, etc.—the leave

24    sought should, as the rules require, be 'freely given.' Of course, the

25    grant or denial of an opportunity to amend is within the discretion of

26    the District Court, but outright refusal to grant the leave without any

27    justifying reason appearing for the denial is not an exercise of

28    discretion; it is merely abuse of that discretion and inconsistent with

the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

# VI.

## CONCLUSION

For all the foregoing reasons, Stanford respectfully requests the Court deny Defendant' Motion to Dismiss.  In the event the Court grants any portion of the Motion to Dismiss, Stanford respectfully requests that it be granted leave to file a Second Amended Complaint.

Dated: 10 March 2023

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.

*Venetia Byars*

_____

VENETIA BYARS
Attorney for
STANFORD HEALTH CARE

STANFORD 'S *OPPOSITION* TO DEFENDANT'
MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

# PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 303 North Glenoaks Boulevard, Suite 700, Burbank, California 91502-3226.  On 10 March 2023, I served the foregoing document(s) entitled:

**STANFORD'S OPPOSITION TO DEFENDANT CHEF WAREHOUSE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

by placing a true copy thereof enclosed in a sealed envelope addressed per the attached Service List.

[  ]   BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. [C.C.P. 1013a(3); F.R.C.P. 5(b)]

[  ]   BY FEDERAL EXPRESS:  I caused such envelope(s), with overnight Federal Express Delivery Charges to be paid by this firm, to be deposited with the Federal Express Corporation at a regularly maintained facility on the aforementioned date. [C.C.P. 1013(c) 1013(d)]

[  ]   BY PERSONAL SERVICE:  I caused the above-stated document(s) to be served by personally delivering a true copy thereof to the individuals identified above.   [C.C.P. 1011(a); F.R.C.P. 5(b)]

[  ]   BY EXPRESS MAIL:  I caused such envelope(s), with postage thereon fully prepaid and addressed to the party(s) shown above, to be deposited in a facility operated by the U.S. Postal Service and regularly maintained for the receipt of Express Mail on the aforementioned date. [C.C.P. 1013(c)]

[  ]   BY TELECOPIER:  Service was effected on all parties at approximately ____:____ am/pm by transmitting said document(s) from this firm's facsimile machine (818/559-4477) to the facsimile machine number(s) shown above.  Transmission to said numbers was successful as evidenced by a Transmission Report produced by the machine indicating the documents

had been transmitted completely and without error.  C.R.C. 2008(e), Cal. Civ. Proc. Code § 1013(e).

[X]    BY ELECTRONIC SERVICE:   By emailing true and correct copies to the persons at the electronic notification address(es) shown on the accompanying service list.  The document(s) was/were served electronically and the transmission was reported as complete and without error.

[X]    State: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on 10 March 2023 in Burbank, California.

_____
MARIA TORRES

## SERVICE LIST

Neil M. Katsuyama, Esq.
Ali R. Kazempour, Esq.
ATKINSON, ANDELSON, LOYA, RUUD & ROMO
12800 Center Court Drive South, Suite 300
Cerritos, CA 90703
Neil.Katsuyama@aalrr.com
Ali.Kazempour@aalrr.com