LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
JOY STEPHENSON-LAWS, ESQ.          (SBN 113755)
RICHARD A. LOVICH, ESQ.              (SBN 113472)
KARLENE J. ROGERS-ABERMAN, ESQ.  (SBN 237883)
DAVID F. MASTAN, ESQ.                 (SBN 152109)
VENETIA BYARS, ESQ.                    (SBN 325741)
vbyars@sacfirm.com
303 N. Glenoaks Blvd., Suite 700
Burbank, CA 91502
Telephone:   (818) 559-4477
Facsimile:    (818) 559-5484

Attorneys for Plaintiff,
STANFORD HEALTH CARE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HEALTH CARE, a California Nonprofit Corporation,<br><br>Plaintiffs,<br><br>V.<br><br>TRUSTMARK SERVICES COMPANY, a Delaware for profit corporation, and DOES 1 THROUGH 25, INCLUSIVE,<br><br>Defendant. | Case No.: 5:22-cv-03946-SVK<br><br>STANFORD'S *OPPOSITION* TO DEFENDANT CHEF WAREHOUSE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>Hearing Date:      April 6, 2023<br>Hearing Time:     1:30 p.m.<br>Courtroom.:         3<br>Before:      Hon. Richard Seeborg |

////

////

////

////

////

////

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II.  FACTUAL BACKGROUND ........................................................1

III.  STANDARD OF REVIEW........................................................2

IV.  THE COURT DOES HAVE SUBJECT MATTER JURISDICTION
UNDER 12(B)(1)…………………………………………..…………..4

V.  DEFENDANT'S MOTION TO DISMISS DOES NOT WITHSTAND
SCRUTINY WITHIN THE FOUR CORNERS OF THE
SAC…..……………………………………………………………....5

   A.  The SAC Pled Sufficient Facts to Allege the Existence of an Implied-
In-Fact
Contract…………………………………………………………5

   B. Stanford's California Unfair Competition Law was plead with
Reasonable Particularity………..……………………………………6

   C. The SAC Pled Sufficient Facts to Allege a Quantum Meruit Cause of
Action Because Defendant Both Requested And Benefited from the
Services Rendered by Stanford…………………………………………8

     1. Trustmark acquiesced in Stanford's provision of services, which is all
that quantum meruit requires ………………………………………11

VI.  IF DEFENDANT' MOTION IS GRANTED, STANFORD
RESPECTFULLY REQUESTS THE COURT GRANT IT LEAVE TO
AMEND………………………………………………………………12

VI.  CONCLUSION………………………………………………………13

i

1
2

## <u>TABLE OF AUTHORITIES</u>

3

<u>Cases</u>

4

*Fednav Ltd. v. Sterling International*
        572 F. Supp. 1268, 1270 (N.D. Cal. 1983) .......................................................2

5

*Bell Atlantic Corp. v. Twombly*
        550 U.S. 544, 570 (2007). ...............................................................................2

6
7

*Ashcroft v. Iqbal*
        550 U.S. 662, 678 (2009)……………………………………………………2

8

*Pareto v. F.D.I.C*
        139 F.3rd 696, 699 (9th Cir. 1998)…………………………………………3

9

*Gilligan v. Jamco Develop Corp.*
        108 F.3rd 246, 249 (9th Cir. 1997)…………………………………………3

10
11

*Swierkiewicz v. Sorema N.A.*
        534 U.S. 506, 514 (2002)……………………………………………………3

12

*Fields v. Sedgwick Assoc. Risks, Ltd.*
        796 F.2d 299, 301 (9th Cir. 1986…………………………………………3

13

*AT& T v. compagnie Bruxelles Lambert*
        94 F.3d 586, 588 (9th Cir. 1996)…………………………………………3

14
15

*Data Disc, Inc. v. Systems Technology Associates, Inc.*
        557 F.2d 1280, 1284, 1285 n. 1 (9th Cir. 1977)……………………………3

16

*Rumming v. United States*
        281 F.3d 158, 161 (5th Cir. 2001)…………………………………………4

17

*Arce v. Children's Hospital Los Angeles*
        211 Cal.App.4th 1455, 1470 (2nd Dist. 2012)………………………………4

18
19

*Stanford Health Care v. Blue Cross Blue Shield of N. Carolina, Inc.*
        No. 21-CV-04598-BLF, 2022 WL 195847, at *3-4 (N.D. Cal. Jan. 21,
        2022)…………………………………………………………………………4

20
21

*Pacific Bay and Stanford Health Care v. Blue Cross Blue Shield of N. Carolina*…6

*Pac. Bay Recovery, Inc. v. California Physicians' Servs.,*
        Inc., 12 Cal. App. 5th 200, 212, 218 Cal. Rptr. 3d 562, 572 (2017)………7

22
23

*Orthopedic Specialists of S. Cal. v. CALPER*
        288 Cal. App. 4th 644, 648 (2014)…………………………………………7

24

*Children's Hospital Central California v. Blue Cross of California*
        226 Cal.App.4th 1260, 1272 (2014)…………………………………………9

25
26

*Bell v. Blue Cross of California*
        131 Cal.App.4th at 212……………………………………………………...9

27

*Bell v. Blue Cross of California*
        Cal.App.4th 211, 213-214, 221, 31 Cal.Rptr.3d 688 (Bell)………………..10

28

*Prospect Medical*
    45 Cal.4th at p. 505, 87 Cal.Rptr.3d 299, 198 P.3d 86………………………10
*Children's Hospital*
    at p. 1274, 172 Cal.Rptr.3d 861………………………………………………...10
*Long Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.*
    71 Cal. App. 5th 323, 335, 286 Cal. Rptr. 3d 419, 426–27 (2021))……….10
*Day v. Alta Bates Med. Ctr.*
    98 Cal.App.4th 243, 248 (2002)………………………………………………11
*Producers Cotton Oil Co. v. Amstar Corp.*
    197 Cal.App.3d 638 (1988), 658-59 (1988)...............……………………..11
*San Joaquin Gen. Hosp. v. United Healthcare Insurance Co.*
    No. 2:16–cv–01904–KJM–EFB, 2017 WL 1093835(E.D. Cal. Mar. 23,
    2017)……………………………………………………………………………12
*Stanford Hosp. and Clinics v. Multinational Underwriters, Inc.*
    No. C–07–05497-JF-RS, 2008 WL 5221071(N.D. Cal. Dec. 12, 2008)…..12
*Stanford Health Care*
    at *10 (N.D. Cal. Jan. 21, 2022)………………………………………………12
*Foman v. Davis*
    371 U.S. 178, 182 (1962)………..……………………………………………13

STANFORD'S OPPOSITION TO DEFENDANT CHEF
WAREHOUSE'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

## **<u>Statutes</u>**

42 U.S.C. §§1320(d), et seq................................................................................6

45 C.F.R. § 160.103............................................................................................6

Cal. Health & Safety Code §§1317……………………………………………...8

Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B…………………………………….....8

West's Ann.Cal.Civ.Code §3521……………………………………………….9

West's Ann.Cal.Health & Safety Code §1371.4…………………………….….9

Restatement of Restitution § 114…………………………………………........9

55 Cal. Jur. 3d Restitution § 57.)…………………………………………….11

STANFORD'S OPPOSITION TO DEFENDANT CHEF
WAREHOUSE'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION AND SUMMARY OF ARGUMENT

4

5        Plaintiff Stanford Health Care ("Stanford") hereby submits the

6    following memorandum of points and authorities in support of its opposition to the

7    motion to dismiss the complaint pursuant to the Federal Rules of Civil Procedure

8    ("FRCP") 12(b)(6) for failure to state a claim ("Motion to Dismiss") filed by

9    Trustmark ("Trustmark").  Defendant contends that the two causes of action

10   asserted in Stanford's Second Amended Complaint ("SAC") must be dismissed for

11   the following reasons: (1) lack of subject matter jurisdiction; (2) for breach of

12   implied-in-fact contract, there was not mutual assent; (3) Stanford failed to plead

13   any facts to support its claim of Quantum Meruit; and (4) Stanford failed to

14   sufficiently plead a claim for Violation of the California Business and Professions

15   code. (Moving Papers p. 8:18-27; 9:1-8).

16          .

17        ## II.  FACTUAL BACKGROUND

18

19        This is an action for payment of amounts due and owing to Stanford

20   in connection with medically necessary care rendered on January 24, 2020 to June

21   10, 2021 to the patient stated on Exhibit A of the SAC ("Patient"),[1] whose health

22   insurance benefits were sponsored and administered by Defendant.  (SAC, ¶ 10).

23        During the relevant time period, Stanford and Trustmark had no

24   existing contract, partnership, association, or any agreement.

25        Stanford verified each Patient' eligibility with Defendant's health

26

27   ─────────────────────────
     [1] The patient is only identified by the initials pursuant to the privacy provisions of the Health Insurance Portability

28   & Accountability Act ("HIPAA"), Pub.L. No. 104-191, 110 Stat.1936 (codified as amended in scattered sections of
     26 U.S.C. and 42 U.S.C.), and California Constitution, art. 1 Section 1.

1   plan, communicated with Defendant on a regular basis and concurrently provided
2   clinical reports to Defendant to get authorizations for the services rendered.  (SAC,
3   ¶ 16, 20, 22).   Stanford timely and properly billed Trustmark, who works with
4   Chef's Warehouse, for the medically necessary services, supplies and/or equipment
5   it rendered to the Patient. (SAC, ¶ 16, 40).  However, Defendant neglected to pay
6   Stanford for the services rendered. (SAC, ¶ 17, 29, 40).

7         In order to recover payment for the medically necessary services
8   rendered to Defendant' member, Stanford filed this lawsuit.

9                    ### III.  <u>STANDARD OF REVIEW</u>

10

11         Federal Rule of Civil Procedure 8(a)(2) only requires a complaint to
12   contain "a short plain statement of the claim showing that the pleader is entitled to
13   relief." Thus, a motion under Rule 12(b)(6) "tests the formal sufficiency of the
14   statement of claim for relief."  *Fednav Ltd. v. Sterling International*, 572 F. Supp.
15   1268, 1270 (N.D. Cal. 1983).  To survive a motion to dismiss, a complaint must
16   contain sufficient factual material to "state a claim that is plausible on its face."
17   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, a claim
18   is factually plausible when "the plaintiff pleads factual content that allows the court
19   to draw the reasonable inference that the defendant is liable for the misconduct
20   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21

22         Dismissal for failure to state a claim is appropriate only where the
23   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable
24   legal theory.  <u>See</u> *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3rd 1097,
25   1104 (9th Cir. 2008).  When reviewing a motion to dismiss under Fed. R. Civ. P.
26   12(b)(6), the Court must accept as true all non-conclusory material allegations of
27   the complaint and construe them in the light most favorable to the plaintiff.
28   *Newman v. Sathyabaglswaran*, 287 F.3rd 786, 788 (9th Cir. 2002).  The court also

- 2 -
STANFORD 'S ***OPPOSITION*** TO DEFENDANT'
MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT

1   must draw in favor of the plaintiff all reasonable inferences derivable from the

2   allegations in the complaint. *Pareto v. F.D.I.C.*, 139 F.3rd 696, 699 (9th Cir.

3   1998). Accordingly, if there are two alternative explanations, one advanced by the

4   defendant and the other advanced by the plaintiff, both of which are plausible, the

5   "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." Starr v.

6   Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, a motion to dismiss under

7   Rule 12(b)(6) is disfavored and is rarely granted, *Gilligan v. Jamco Develop.*

8   *Corp.*, 108 F.3rd 246, 249 (9th Cir. 1997), and should be granted only where it

9   appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts

10  in support of the claim that would entitle the plaintiff to relief. *Conley v. Gibson*,

11  355 U.S. 41, 45-46 (1957); see also, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

12  514 (2002)("A court may dismiss a complaint only if it is clear that no relief could

13  be granted under any set of facts that could be proved consistent with the

14  allegations.")

15

16          Furthermore, "until an evidentiary hearing or trial on the merits, the

17  complaint's uncontroverted factual allegations must be accepted as true, and any

18  factual conflicts in the parties' declaration must be resolved in the plaintiff's

19  favor." *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986);

20  see also *AT&T v. compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

21  ("Conflicts between the evidence must be resolved in the plaintiff's favor.") If

22  material facts are uncontroverted or if the evidence is inadequate, a court may

23  permit discovery to aid in flushing out the facts. *Data Disc, Inc. v. Systems*

24  *Technology Associates, Inc.*, 557 F.2d 1280, 1284, 1285 n. 1 (9th Cir. 1977). If the

25  submitted materials raise issues of credibility or disputed questions of fact, the

26  district court has the direction to hold an evidentiary hearing in order to resolve the

27  contested issues. *Id*.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV. THE COURT DOES HAVE SUBJECT MATTER JURISDICTION UNDER 12(B)(1)

Under the Federal Rules of Civil Procedure Rule (12)(b)(1), a party is allowed to challenge the subject matter jurisdiction of a court to hear a case. *Rumming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "Under Federal Standard for review of the grant of a motion for dismiss, dismissal is proper only where it appears beyond doubt that plaintiff can prove no set of facts in support of claims that would entitle him to relief.  *Arce v. Children's Hospital Los Angeles*, 211 Cal.App.4th 1455, 1470 (2nd Dist. 2012).  The Court "must assume the truth of the complaint's properly pleaded or implied factual allegations."  *Id.*

Trustmark's entire argument is based on conjecture and conclusionary statements.   Trustmark also argues this case is like *Stanford v Blue Cross*, wherein BCBS claims there is no subject matter jurisdiction as Stanford had not exhausted administrative procedures before the North Carolina Office of Administrative Hearings first.. *Stanford Health Care v. Blue Cross Blue Shield of N. Carolina, Inc.*, No. 21-CV-04598-BLF, 2022 WL 195847, at *3-4 (N.D. Cal. Jan. 21, 2022).

*Stanford v Blue Cross* can be distinguished with this matter. Trustmark, under California law, must state the name of the financially responsible party in its correspondence under Insurance Code 880. *California Insurance Code* § 880 (2018). Trustmark had over two years to identify the responsible party but did not reveal the responsible party well in any appeal process, for half the claims over a year after correspondence was initiated. Now, Trustmark is disclaiming any responsibility even though in its correspondence with Stanford improperly delayed indication that another party was financially responsible. This practice causes prejudice to Stanford as Stanford did not have enough time to diligently try to

resolve this claim with the responsible party as well as a risk that Chef's Warehouse may argue that the statute of limitations for its claim is gone. As a result of this prejudice and as the responsible party creating correspondence that omits the actual payor, Trustmark should be held responsible.

## V.DEFENDANT'S MOTION TO DISMISS DOES NOT WITHSTAND SCRUTINY WITHIN THE FOUR CORNERS OF THE SAC

### A.  The SAC Pled Sufficient Facts to Allege the Existence of an Implied-In-Fact Contract.

Trustmark incorporates Chef's Warehouse argument into their Motion, as such, Stanford incorporate their argument to Chef's Warehouse motion into this opposition as well.  Trustmark alleged that the SAC fails to demonstrate any evidence to show the creation of an implied contract. (Moving Papers p.13:7-12).

In Trustmark's opposition, they state that the facts alleged in the SAC fail to demonstrate that Trustmark acted in a way evidencing a meeting of the minds to create an implied contract. (Moving Papers p.9:10-11).

Stanford's allegations are firmly based on facts supporting mutual intentions to form a valid implied-in-fact contract as explained below.

Stanford pleaded: (1) clear contract terms – i.e., Stanford would provide treatment to Defendant' health plan enrollees, and in return, Defendant would pay the charges associated with such treatment, (SAC, ¶ 20-23); (2) that the parties agreed to give each other something of value – i.e., medically necessary services in exchange for monetary payment, (*Id*.); and (3) that the parties agreed to the terms. (SAC, ¶ 26). This is further discussed in Stanford's opposition to Chef's Warehouse Motion to Dismiss.

Stanford amended to add in evidence and claims to show the meeting of the mind needed for an implied-in-fact contract.

Additionally, this case is different from *Pacific Bay* and *Stanford Health Care v. Blue Cross Blue Shield of N. Carolina*. This case deals with multiple patients coming into Stanford multiple times and no communication from Trustmark to change or move said patients. In fact, Chef's Warehouse, though Trustmark, did not start to send out EOB's until the end of the total treatment of the patients mentioned in the Implied in Fact cause of action.  (SAC, ¶ 24-25). Stanford adequately pled that the treatment of those patients multiple times, with repeated contact with Defendant over it does give rise to mutual assent, as Defendant knew about the treatment, how much it would cost and did not do anything in response. Finally, Defendant is asserting that Stanford needs to pled HIPAA confidential information in the complaint to be able to bring this action of recovery, such as EOB information, verification and authorization information. (Moving Papers p.15:8-13). This is clearly against the privacy provisions of the federal Health Insurance Portability & Accountability Act ("HIPAA") 42 U.S.C. §§1320(d), et seq and 45 C.F.R. § 160.103.

For the above stated reasons, Stanford properly pled a cause of action for breach of implied-in-fact contract.  Thus, Trustmark's Motion should be denied.

**B.**     **Stanford's California Unfair Competition Law was plead with Reasonable Particularity**

Trustmark adopted Chefs Warehouse arguments put forward in their Motion to Dismiss. To be brief, Stanford also incorporates the arguments they put forward in their Opposition to Chef's Warehouse Motion.

Trustmark also tried to misstate what is plead in the SAC. First, Trustmark also tries to hold Stanford to a contract they were not apart of nor did they sign. The Plan Document is pointless to what Stanford has to pay, unless giving evidence of any benefit given to Trustmark or Chef's Warehouse. Second, Trustmark does delineate emergency care claims vs non-emergency claims in the SAC, if Trustmark had completely read it. (SAC, ¶ 33).  Finally, Trustmark does not cite ANY sources that say Stanford must state emergency vs non-emergency, the amount to be paid under the Plan Document, etc. As already discussed, as Stanford is not a party to the Plan Document, they do not need to be beholden to the calculations therein. Stanford did plead the amount billed, the amount owed, dates of service and file numbers so that Trustmark could find and locate the Patients in question that this case is about. Trustmark tries to distort the *Pacific Bay Recovery* reasoning, which is inapplicable in this case. *Pacific Bay* deals with nonemergent care, unlike this case wherein the Quantum Meruit claim only deals with emergency care. *Pac. Bay Recovery, Inc. v. California Physicians' Servs.*, Inc., 12 Cal. App. 5th 200, 212, 218 Cal. Rptr. 3d 562, 572 (2017). *Pacific Bay* relies entirely on non-emergency  treatment and pleading on quantum meruit, which does not matter here as this is an emergency services plead cause of action.

Finally, the Defendants assert that Stanford Hospital's UCL claim must fail because California Health & Safety Code Section 1371.4 does not apply to an out-of-state self-funded plan.  But Stanford does not cite Section 1371.4 even once in its Unfair Competition Law cause of action.  Instead, Stanford expressly relies upon the rule that "[n]on-contracted health plans, such as the Defendants, are required to pay non-emergency services at the amount as set forth in their enrollee's Evidence of Coverage."  (SAC, ¶ 6. (citing *Orthopedic Specialists of S. Cal. v. CALPER*, 288 Cal. App. 4th 644, 648 (2014).) The Defendants' argument about the inapplicability of Section 1371.4 is itself entirely inapplicable.

1

2   **C.**     **The SAC Pled Sufficient Facts to Allege a *Quantum Meruit* Cause of**

3          **Action Because Defendant Both Requested And Benefited from the**

4          **Services Rendered by Stanford**

5

6          Defendant's motion to dismiss as to the third cause of action rests

7   upon the fact that Stanford did not properly allege Defendant made a request for

8   services and that the services rendered benefited Defendant (Moving Papers p.

9   21:13-15, 26-27; 22:1-2).

10         As discussed below and above, there is no contract between

11  Trustmark and Stanford. By abandoning Patient 8, and leaving Stanford to pay for

12  their treatment, Trustmark received benefits for the treatment it should have

13  provided. Under the Plan between Trustmark and Trustmark, Trustmark would

14  have to pay for the treatment of Patient 8. Trustmark obvious benefit is that it did

15  not have to pay for Patients 8's treatment. It left Stanford out of pocket for the

16  treatment and payment of Patient 8's emergency room visit. Trustmark further

17  abandoned Patient 8 by not redirecting him in any follow up treatment, though

18  those claims are not part of the *quantum meruit* claim. Additionally, as this was an

19  emergency service, Trustmark benefited from Stanford keeping Patient 8 alive and

20  well, thus that they can continue to be a member and pay for their insurance under

21  Trustmark. Trustmark main argument is that they receive no benefit from their

22  members being treated, which brings into question what their responsibility is as an

23  insurer if not to help provide and pay for treatment for their members.

24

25         Under California law, hospitals are required to provide necessary

26  health care and insurers are required to pay the customary and reasonable value.

27  *Cal. Health & Safety Code* §§1317 et seq. Trustmark admits, through the Plan

28  Document a contradictory assertion that although it covers the patient's treatment,

1   the patient derived no benefits from this care.  This is a disingenuous argument. As

2   Stanford is not a party to the Plan Document, Plaintiff is entitled to the reasonable

3   and customary value of the treatment provided, without a discount. And there is no

4   argument towards whether a benefit was received, as the Plan Document

5   acknowledges that this treatment would be paid for under the Document.

6

7        Despite Defendant's attempt to dodge its financial obligation to

8   reimburse Stanford for the emergency services rendered to Defendant's members,

9   California Courts have consistently recognized that reimbursement for emergency

10  services to a noncontracted provider shall be at the "reasonable and customary

11  value." (*Children's Hospital Central California v. Blue Cross of California*, 226

12  Cal.App.4th 1260, 1272 (2014) (finding Cal. Code Regs. tit. 28, §

13  1300.71(a)(3)(B) defines 'Reimbursement of a Claim' by a health plan to a

14  noncontracted emergency provider as "'the payment of the reasonable and

15  customary value for the health care services rendered.'")). More specifically, the

16  *Bell Court* acknowledged that under:

17

18        Benefit and burden: statute and restitution principles, noncontracting

19        emergency medical room physicians, who claimed health care service

20        plan reimbursed them for emergency care at amounts below cost and

21        value of services, had implied-in law right to recover for reasonable

22        value of their services. West's Ann.Cal.Civ.Code §3521; West's

23        Ann.Cal.Health & Safety Code §1371.4; Restatement of Restitution §

24        114.

25

26  (*Bell v. Blue Cross of California*, supra, 131 Cal.App.4th at 212, Headnote 6.)

27

28        "If a hospital or other medical provider believes that the amount of

---

1   reimbursement it has received from a health [] plan is below the "reasonable and
2   customary value" of the emergency services it has provided, the hospital or
3   provider may assert a quantum meruit claim against the plan to recover the
4   shortfall. *Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 213-214,
5   221, 31 Cal.Rptr.3d 688 (Bell); *Prospect Medical*, supra, 45 Cal.4th at p. 505, 87
6   Cal.Rptr.3d 299, 198 P.3d 86; *Children's Hospital,* at p. 1273). As the plaintiff in a
7   quantum meruit lawsuit, the hospital or provider bears the burden of establishing
8   that the plan's reimbursement was less than the "reasonable and customary value"
9   of its services. (*Children's Hospital*, at p. 1274, 172 Cal.Rptr.3d 861.)" (*Long
10  Beach Mem'l Med. Ctr. v. Kaiser Found. Health Plan, Inc.,* 71 Cal. App. 5th 323,
11  335, 286 Cal. Rptr. 3d 419, 426–27 (2021)).

12

13          It is unreasonable that Trustmark's can claim under *quantum meruit*
14  that no payment should be made even if Patient 8 made 11 visits to Stanford.
15  Trustmark could still claim, as it does here, that it never requested services.  And
16  yet, $478,797.96 worth of services would remain unpaid.

17

18          This goes against public policy in keeping hospital doors open. And
19  yet, it is a central point in Trustmark's argument.  The real dispute in this case is
20  over the "the reasonable value of the services," which is the "[t]he measure of
21  recovery in quantum meruit."  (*Children's Hospital* at p. 1274). But Trustmark is
22  trying to finagle out of *quantum meruit* elements because it knows "reasonable
23  value" issues are not at the motion to dismiss stage.  No market participant believes
24  hospitals are in the business of providing gratuitous services, and certainly not to
25  insured patients, on their third go-round, when hospitals obtained verification and
26  authorization for services.

27

28          In any event, Trustmark arguments also fail on their own terms.

---

FC 30035                                    - 10 -          STANFORD 'S ***OPPOSITION*** TO DEFENDANT'
                                                            MOTION TO DISMISS PLAINTIFF'S SECOND
                                                            AMENDED COMPLAINT

1      **1.      Trustmark acquiesced in Stanford's provision of services, which**
2              **is all that quantum meruit requires.**

3

4              While it is true that a *quantum meruit* plaintiff must show "either an
5      express or implied request" for services (*Day v. Alta Bates Med. Ctr.,* 98
6      Cal.App.4th 243, 248 (2002)), that very same case makes clear that the "implied
7      request" can be satisfied by "acquiesce[ing]" in them.  (*Id.* at p. 249.)  The case
8      *Day* cites to *Producers Cotton Oil Co. v. Amstar Corp.,* 197 Cal.App.3d 638
9      (1988), which involved a farmer, the buyer of his crops, the farmer's lender, and an
10     independent contractor who harvested the farmer's crops.  The buyer paid the
11     harvester to bring in the crops, but the lender claimed a superior security interest
12     and the buyer ended up losing the money it fronted so the crops could be
13     harvested.  (*Id.* at pp. 643-645.)  The lender knew the buyer was fronting these
14     costs and stood mute.  (*Id.* at pp. 658-59.)  The Court of Appeal concluded the
15     lender had acquiesced in the buyer's payment to the harvester, even though the
16     harvester and the lender had nothing to do with one another.  (*Ibid.*)  That is to say,
17     a cash payment to a third-party with no relation to the defendant was deemed
18     "requested," or more accurately, acquiesced in.  Thus, the hornbook law in
19     California is: "[W]here a useful service of a type usually charged for is performed
20     for another with the latter's knowledge, a promise to pay its reasonable value is
21     implied from the fact that he or she expressed no dissent."  (55 Cal. Jur. 3d
22     Restitution § 57.)

23

24             California courts applying California law define "request" for
25     purposes of *quantum meruit* to include accepting services silently or otherwise
26     simply acquiescing in services one knows cost money (*Producers Cotton Oil Co.*
27     *v. Amstar Corp.,* 197 Cal.App.3d 638, 658-59 (1988); 55 Cal. Jur. 3d Restitution §
28     57); and some federal courts applying California law have let identical claims

proceed (*San Joaquin Gen. Hosp. v. United Healthcare Insurance Co.,* No. 2:16–cv–01904–KJM–EFB, 2017 WL 1093835(E.D. Cal. Mar. 23, 2017)), at the least past the motion to dismiss/demurrer stage (*Stanford Hosp. and Clinics v. Multinational Underwriters, Inc.,* No. C–07–05497-JF-RS, 2008 WL 5221071(N.D. Cal. Dec. 12, 2008)), since discovery may reveal more about how Trustmark views its authorizations in practice.

The choice before the Court is clear:  an audaciously overbroad statement of law that would allow health plans to skip out on the bill entirely or a consistent application of California *quantum meruit* law.  Although Trustmark paid a small amount in this case, eliminating potential *quantum meruit* liability as a matter of law because patients are the ones who physically appear in doctors' offices (rather than their insurers) will guarantee the next non-contracted insurer pays even less.

Finally, this case is wholly separate from *Stanford Health Care v. Blue Cross Blue Shield of North Carolina, Inc.*. That case did not involve emergency care, in fact the Court did not rule on what would happen in emergency care situations. "The Court notes that based on Stanford's pleadings, the situation it raises is a hypothetical not before the Court, since Stanford has not adequately pled that any of the specific services in this case involved emergency care or an unconscious patient. See FAC, ECF No. 13 ¶ 21 (generally pleading that the services at issue included "emergency services" without specifying the relevant patients or claims)." *Stanford Health Care* at *10 (N.D. Cal. Jan. 21, 2022).

- 12 -

# VI.

## IF DEFENDANT' MOTION IS GRANTED, STANFORD RESPECTFULLY REQUESTS THE COURT GRANT IT LEAVE TO AMEND

Stanford believes it sufficiently pled each cause of action alleged in its SAC based upon state law obligations between it and Defendant, independent of the terms of Patient's health plan.  However, in the event the Court finds otherwise, Stanford respectfully requests the Court grant it leave to amend.

Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.**

**CONCLUSION**

For all the foregoing reasons, Stanford respectfully requests the Court deny Defendant' Motion to Dismiss.  In the event the Court grants any portion of the Motion to Dismiss, Stanford respectfully requests that it be granted leave to file a Second Amended Complaint.

Dated: 10 March 2023

LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.

*Venetia Byars*

_____

VENETIA BYARS
Attorney for
STANFORD HEALTH CARE

1

## PROOF OF SERVICE

2

3      I am employed in the county of Los Angeles, State of California.  I am
4   over the age of 18 and not a party to the within action; my business address is 303
    North Glenoaks Boulevard, Suite 700, Burbank, California 91502-3226.  On 10
5   March 2023, I served the foregoing document(s) entitled:

6   **STANFORD'S OPPOSITION TO DEFENDANT CHEF WAREHOUSE'S**
7   **MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

8   by placing a true copy thereof enclosed in a sealed envelope addressed per the
    attached Service List.
9

10  [ ]   BY MAIL:  I am "readily familiar" with the firm's practice of collection and
            processing correspondence for mailing.  Under that practice it would be
11          deposited with the United States Postal Service on that same day with
12          postage thereon fully prepaid at Burbank, California in the ordinary course
            of business.  I am aware that on motion of the party served, service is
13          presumed invalid if postal cancellation date or postage meter date is more
14          than one day after date of deposit for mailing in affidavit. [C.C.P. 1013a(3);
            F.R.C.P. 5(b)]
15

16  [  ]   BY FEDERAL EXPRESS:   I caused such envelope(s), with overnight
            Federal Express Delivery Charges to be paid by this firm, to be deposited
17          with the Federal Express Corporation at a regularly maintained facility on
18          the aforementioned date. [C.C.P. 1013(c) 1013(d)]

19  [ ]   BY PERSONAL SERVICE:   I caused the above-stated document(s) to be
            served by personally delivering a true copy thereof to the individuals
20          identified above.   [C.C.P. 1011(a); F.R.C.P. 5(b)]

21  [ ]   BY EXPRESS MAIL:   I caused such envelope(s), with postage thereon
22          fully prepaid and addressed to the party(s) shown above, to be deposited in a
            facility operated by the U.S. Postal Service and regularly maintained for the
23          receipt of Express Mail on the aforementioned date. [C.C.P. 1013(c)]

24  [ ]   BY TELECOPIER:   Service was effected on all parties at approximately
25          ____:____ am/pm by transmitting said document(s) from this firm's
            facsimile machine (818/559-4477) to the facsimile machine number(s)
26          shown above.  Transmission to said numbers was successful as evidenced by
27          a Transmission Report produced by the machine indicating the documents

28

had been transmitted completely and without error.  C.R.C. 2008(e), Cal. Civ. Proc. Code § 1013(e).

[X]   BY ELECTRONIC SERVICE:   By emailing true and correct copies to the persons at the electronic notification address(es) shown on the accompanying service list.  The document(s) was/were served electronically and the transmission was reported as complete and without error.

[X]   State:  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on 10 March 2023 in Burbank, California.

*maria Torres.*

_____

MARIA TORRES

## SERVICE LIST

Neil M. Katsuyama, Esq.
Ali R. Kazempour, Esq.
ATKINSON, ANDELSON, LOYA, RUUD & ROMO
12800 Center Court Drive South, Suite 300
Cerritos, CA 90703
Neil.Katsuyama@aalrr.com
Ali.Kazempour@aalrr.com