United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STANFORD HEALTH CARE,

                Plaintiff,

     v.

TRUSTMARK SERVICES COMPANY, et al.,

                Defendants.

Case No. 22-cv-03946-RS

**ORDER GRANTING MOTIONS TO DISMISS**

## I. INTRODUCTION

Plaintiff Stanford Health Care ("Stanford") filed this diversity action against Defendants Trustmark Health Benefits, Inc. ("Trustmark"),[1] and The Chefs' Warehouse, Inc. ("TCW"). The full background has been described previously and need not be repeated at length here. *See* Dkt. 42 ("MTD Order"), at 2. In essence, Plaintiff avers it provided emergency medical services to "beneficiaries of a health insurance plan sponsored, administered and/or funded by Defendants," ("the TCW Plan"), but that Defendants have failed to pay the full amounts billed by Plaintiff. Dkt. 44 ("SAC") ¶ 10. After its First Amended Complaint ("FAC") was dismissed, Plaintiff filed the operative Second Amended Complaint ("SAC"), which raises three claims for relief against each Defendant: breach of implied contract, violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*, and *quantum meruit*. Defendants have separately moved

---

[1] Trustmark notes it was incorrectly named as "Trustmark Services Company." *See* Dkt. 51, at 2.

1    to dismiss. These motions are suitable for disposition without oral argument, and the hearings

2    scheduled for April 6, 2023, are vacated. Civ. L.R. 7-1(b). For the reasons discussed below, both

3    motions are granted.

4                                    **II. LEGAL STANDARD**

5           A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's

6    subject-matter jurisdiction over the asserted claims. The plaintiff bears the burden of proving

7    jurisdiction at the time the action is commenced. *See Tosco Corp. v. Cmtys. for Better Env't*, 236

8    F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77

9    (2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v.*

10   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained

11   in the complaint are insufficient on their face to invoke federal jurisdiction," whereas in a factual

12   attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise

13   invoke federal jurisdiction." *Id.*

14          Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a

15   claim. A complaint must contain a short and plain statement of the claim showing the pleader is

16   entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a

17   complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its

18   face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S.

19   544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported

20   by mere conclusory statements, do not suffice." *Id*. Dismissal under Rule 12(b)(6) may be based

21   on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged"

22   under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d

23   1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When evaluating such

24   a motion, courts "accept all factual allegations in the complaint as true and construe the pleadings

25   in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th

26   Cir. 2005).

27   ///

28

United States District Court
Northern District of California

### III. DISCUSSION

Both Defendants have separately moved to dismiss — Trustmark under Rules 12(b)(1) and 12(b)(6), and TCW under Rule 12(b)(6) alone. As the SAC raises all three claims against both Defendants,[2] the arguments raised in the motions are jointly addressed as to each claim below. None of the new averments in the SAC sufficiently address the deficiencies identified in the FAC, and the new UCL claim is not pleaded adequately.

### A. Breach of Contract

The SAC argues Defendants created an implied contract with Plaintiff when, "by its [sic] words and/or conduct," Defendants requested that Stanford provide emergency medical care to patients under the TCW Plan. SAC ¶ 21. Defendants then breached the contract by underpaying Stanford. *Id.* ¶ 29. This claim was previously dismissed. *See* MTD Order, at 5. Plaintiff tries to shore up its argument that a contract was created by now averring that Defendants "instructed its [sic] members to seek emergency relates [sic] medical services to the nearest emergency hospital," verified and authorized this care, "failed to make arrangement [sic] to transfer the Patients to another hospital," and issued only partial payments to Plaintiff. SAC ¶ 22.

Even taking these averments as true, none make a viable showing that an implied contract was created. First, that Defendants may have instructed their members to seek emergency care at

---

[2] The SAC exclusively discusses Defendants' actions collectively. To the extent Plaintiff seeks to establish Trustmark is specifically liable because it "improperly delayed indication that another party was financially responsible" for the members' claims here, those averments appear in Plaintiff's opposition, not on the face of the SAC, and thus are not considered. Dkt. 56, at 4–5.

Trustmark raises the separate argument that it is not a proper defendant because it is only a claims processor for TCW and "does not insure benefits or retain any insurance risk pertaining to claims made." Dkt. 51, at 11. In support of this, it offers a declaration as well as a copy of the TCW Employee Benefit Plan Document, which lists Trustmark as the "designated claims processor" under the TCW Plan. Dkt. 51-3, at 2; *see* Dkt. 51-2. This argument, brought under a Rule 12(b)(1) motion, is more appropriately considered as a Rule 12(b)(6) motion, as Trustmark does not, for instance, dispute that diversity jurisdiction exists here. *See Finn v. United Healthcare Ins. Co.*, No. 12cv296-LAB (WVG), 2013 WL 1164343, at *1–2 (S.D. Cal. Mar. 20, 2013) (reviewing Rule 12(b)(6) motion to dismiss brought by defendant arguing it was merely a claims administrator). Under that standard of review, while Trustmark has certainly made a strong case for why it cannot be held liable, it has raised a question of fact that should not be resolved on a 12(b)(6) motion.

the nearest hospital has no bearing on any agreement between Defendants and Plaintiff. Second, as noted in the prior order, "courts have repeatedly rejected the argument that verification of benefits and authorization of services, alone, can establish an implied contract." MTD Order, at 5; *see Stanford Health Care v. Blue Cross Blue Shield of N.C., Inc.* ("*BCBS*"), No. 21-cv-04598-BLF, 2022 WL 195847, at \*6 (N.D. Cal. Jan. 21, 2022) (collecting cases). Third, as TCW argues, the fact that Plaintiff only received partial payments undermines the contention that there was ever a meeting of the minds as to price. *BCBS*, 2022 WL 195847, at \*6. Finally, Plaintiff's averment that it was already legally obligated to provide emergency medical care similarly undermines the contention that there was any consideration. SAC ¶ 12; *US Ecology, Inc. v. California*, 111 Cal. Rptr. 2d 689, 701 (Ct. App. 2001). The SAC thus does not sufficiently establish that the parties' conduct evidences an implied contract, and the breach of contract claim is therefore dismissed.

### B. *Quantum Meruit*

Plaintiff's *quantum meruit* claim was previously dismissed under Rule 12(b)(6). MTD Order, at 5. Plaintiff now avers it provided a benefit to Defendants by allowing them to "make good on promises" that their members would "receive and be covered for medically necessary services" and that Defendants "would shield their members from the bulk of the financial responsibility for payment of medical care received by them and their families." SAC ¶ 33.

Whether this can be considered a direct benefit to Defendants is a somewhat dubious premise in light of the relevant case law. *See BCBS*, 2022 WL 195847, at \*10. Even assuming it can, the SAC does not state what promises were made between Defendants and the members of the TCW Plan, nor whether the members would have been expected to shoulder "the bulk of the financial responsibility" for their emergency care at Stanford Hospital.[3] Further, as with its breach

---

[3] The TCW Employee Benefit Plan Document, provided by Trustmark, appears to contemplate multiple coverage rates for emergency services, depending on the status of the provider vis-à-vis the TCW Plan. *See* Dkt. 51-3, at 18. Plaintiff confusingly argues that the Plan Document is not relevant because Plaintiff is not a party to it. *See* Dkt. 55, at 14. Yet the Plan Document is clearly relevant insofar as it buttresses or undermines Plaintiff's position that it helped Defendants make good on its "promises made," as established by the Plan Document. SAC ¶ 33. Trustmark's request for judicial notice is granted as to the Plan Document. *See* Dkt. 51-1.

United States District Court
Northern District of California

of contract claim, Plaintiff fails to state adequately that Defendants specifically requested the services rendered. Many other courts reviewing similar allegations have concluded that a *quantum meruit* claim will not lie where a patient requests services, and the insurer then verifies the patient's coverage. *See id.* at *9 (collecting cases). The *quantum meruit* claim is thus still not pleaded adequately and is also dismissed.

### C. UCL Claim

The SAC adds a new claim under California's UCL. The UCL "bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair,'" each of which are independent grounds for liability. *Shaeffer v. Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 276 (Ct. App. 2020) (quoting CAL. BUS. & PROF. CODE § 17200). Plaintiff appears to assert that Defendants violated the "unlawful" prong by failing to pay either the "reasonable value" of the emergency medical services, or the rate contemplated by the patients' "Evidence of Coverage." Instead, Defendants paid out a lower rate determined by ELAP Services, LLC, which constituted a violation of California law. SAC, at 4, 8–9 (citing CAL. HEALTH & SAFETY CODE § 1371.4, and CAL. CODE REGS. tit. 28, § 1300.71).

TCW argues this claim, along with the other two claims, is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The prior order, while acknowledging the potential preemption problem, did not reach a conclusion as to whether ERISA preempts any of Plaintiff's claims. *See* MTD Order, at 6–7. While the Act broadly preempts all claims that "relate to" an ERISA plan, it does not preempt "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988). The Ninth Circuit has further held in several cases that independent state law claims by third-party providers "lie outside the bounds of the ERISA 'relates to' standard." *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1009 (9th Cir. 1995); *see Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 977–80 (9th Cir. 2007). Other district courts in the Ninth Circuit have applied this standard to cases such as this, where a healthcare provider seeks repayment from an insurer

1   under California law. *See John Muir Health v. Cement Masons Health & Welfare Tr. Fund for N.*

2   *Cal.*, 69 F. Supp. 3d 1010, 1021 (N.D. Cal. 2014); *Hoag Memorial Hosp. v. Managed Care*

3   *Adm'rs*, 820 F. Supp. 1232, 1235 (C.D. Cal. 1993). *But see Fast Access Specialty Therapeutics,*

4   *LLC v. UnitedHealth Group, Inc.*, 532 F. Supp. 3d 956, 972–73 (S.D. Cal. 2021). The Ninth

5   Circuit precedent is on point, especially in light of the fact that, as Plaintiff argues, it could not

6   have brought an ERISA claim against Defendants because it is not a participant or beneficiary of

7   the TCW Plan, nor is it standing in the shoes of one. Dkt. 55, at 10–11; *Aetna Health Inc. v.*

8   *Davila*, 542 U.S. 200, 210 (2004). TCW thus fails to persuade that ERISA preempts Plaintiff's

9   UCL claim.

10         TCW (and Trustmark, by extension, *see* Dkt. 51, at 17) further argues the UCL claim is

11   meritless because the underlying California laws do not apply to TCW, and because Plaintiff seeks

12   an award of compensatory damages, which is not a cognizable remedy under the UCL. Plaintiff

13   does not meaningfully address either of these arguments in its opposition. The former appears to

14   turn on questions of fact — that is, whether the TCW Plan is regulated by the California

15   Department of Managed Health Care — that are better left resolved at a later stage of litigation. As

16   to the latter argument, TCW is correct that "damages are unavailable as a remedy under the

17   UCL."[4] *Los Defensores, Inc. v. Gomez*, 166 Cal. Rptr. 3d 899, 912 (Ct. App. 2014) (citing *Clark v.*

18   *Super. Ct.*, 235 P.3d 171 (Cal. 2010)). Restitution, on the other hand, is an available UCL remedy.

19   The California Supreme Court has defined this restitution as "compelling a UCL defendant to

20   return money obtained through an unfair business practice to those persons in interest from whom

21   the property was taken, that is, to persons who had an ownership interest in the property or those

22   claiming through the person." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944 (Cal.

23   2003) (quoting *Kraus v. Trinity Mgm't Servs., Inc.*, 999 P.2d 718, 725 (Cal. 2000), *superseded by*

24   *statute on other grounds as stated in Arias v. Super. Ct.*, 209 P.3d 923 (Cal. 2009)).

25

26   _____

27   [4] The SAC is nonspecific as to what remedy it seeks to recover money from Defendants, but
    Plaintiff's opposition explicitly clarifies it is seeking damages. Dkt. 55, at 11.

28

ORDER GRANTING MOTIONS TO DISMISS
CASE NO. 22-cv-03946-RS

United States District Court
Northern District of California

1    While restitution may be an available remedy under the UCL generally, it is inapplicable

2  under the facts pleaded in the SAC. Plaintiff does not describe a case in which "the money

3  [P]laintiff seeks was obtained by [Defendants] from [Plaintiff] in the first place." *Krueger v.*

4  *Wyeth, Inc.*, 396 F. Supp. 3d 931, 954 (S.D. Cal. 2019) (citing *Kraus*, 999 P.2d at 725)). Rather, it

5  seeks Defendants' "ill-gotten gains," which courts have found cannot be recovered in restitution

6  under the UCL. *Koehler v. Litehouse, Inc.*, No. CV-12-04055 SI, 2012 WL 6217635, at *8 (N.D.

7  Cal. Dec. 13, 2012); *see In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1090–91 (S.D. Cal.

8  2020). Thus, Plaintiff has not stated a cognizable remedy under the UCL, and this claim is

9  dismissed. Leave to amend is granted only for this claim to the extent that Plaintiff can attempt to

10  seek a remedy allowed under the UCL. *Koehler*, 2012 WL 6217635, at *8.

11                                    **IV. CONCLUSION**

12    Plaintiff has again failed to state any claims for which relief can be granted, and the

13  motions are both granted. Leave to amend is granted only as to the UCL claim, as discussed

14  above. Any amended pleading must be filed within 10 days of this order.

15

16  **IT IS SO ORDERED**.

17

18  Dated: March 31, 2023

19  _____

20  RICHARD SEEBORG
    Chief United States District Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California